## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**CUS4, INC. D/B/A
RICHMAR & ASSOCIATES et al.**

**Plaintiff,**

**v.**

Case No. _____

**GEORGE WASHINGTON UNIVERSITY,**

**Defendant**

---

### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER,
### EMERGENCY STATUS AND SCHEDULING CONFERENCE
### <u>AND PRELIMINARY INJUNCTION</u>

Pursuant to Federal Rule of Civil Procedure 65 (a) and LCvR 65.1 plaintiff, CUS 4, Inc.

d/b/a Richmar & Associates, Inc., hereby moves this Court:

1.    To issue a temporary restraining order, pending the hearing and determination of

plaintiff's request for a preliminary injunction, enjoining the defendant, George Washington

University from:

a.    any copying, alteration or modification of a plaintiff's registered and copyrighted

computer program system known as the Document Control and Management Systems ("DCMS

Computer Program");

b.    requiring defendant to return to Richmar all copies of the DCMS Computer

Program source code;

    c.      enjoining the defendant from use of the "Document Only" function of the DCMS and that plaintiff be given access and/or oversight of the removal of this feature from defendant's version of the DCMS Computer Program; and

    d.      from providing access to the DCMS Computer Program source code to any third party.

    2.      To issue a preliminary injunction enjoining the defendant, George Washington University from:

    a.      any copying, alteration or modification of a plaintiff's registered and copyrighted computer program system known as the Document Control and Management Systems ("DCMS");

    b.      requiring defendant to return to Richmar all copies of the DCMS Computer Program source code;

    c.      enjoining the defendant from use of the "Document Only" function of the DCMS and that plaintiff be given access and/or oversight of the removal of this feature from defendant's version of the DCMS Computer Program; and

    d.      from providing access to the DCMS Computer Program source code to any third party.

    3.      That the Court set an emergency status and scheduling conference at its earliest opportunity to hear the plaintiff's motion for a temporary restraining order, to set a date for a preliminary injunction and the pleadings supporting and opposing such an injunction and to hear plaintiff's attached motion for expedited discovery.

2

DATED: May 7, 2007

Respectfully submitted,

Geoffrey P. Gitner (DC Bar No. 176479)
Law Offices of Geoffrey P. Gitner
Watergate, Twelfth Floor
600 New Hampshire Ave., N.W.
Washington, D.C. 20037
Ph: (202) 772-5926
Fax: (202) 772-5858

Counsel to Plaintiff

### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **CUS4, INC. D/B/A**<br>**RICHMAR & ASSOCIATES, et al.**<br><br><br><br>**Plaintiff,**<br><br>**v.**<br><br>**GEORGE WASHINGTON UNIVERSITY,**<br><br>**Defendant** | <br><br><br><br><br><br>Case No. |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
### TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

#### I.    Factual Background

The plaintiff seeks immediate injunctive relief for copyright infringement by the defendant, George Washington University ("GW"). Plaintiff, CUS4, Inc., doing business as Richmar & Associates ("Richmar") is a Washington, D.C. software development company. (Declaration of Richard Gordon, Jr. ["Gordon Decl."] at ¶ 1).

Richmar is the registered owner of the copyrighted Document and Case Management System ("the DCMS Computer Program"). (Complaint ["Comp."] at ¶ 11; Ex. 2, attached to the Complaint). (Hereafter all exhibits attached to the complaint and referred to in this Memorandum shall be designated as "Comp. Ex. __". Gordon's declaration is attached to this Memorandum as Ex. 1).

As more fully described in the Verified Complaint and attached Declaration of Richard Gordon, Jr., Richmar's president, the DCMS Computer Program is a unique software program and code that permits the storing, search and retrieval of vast numbers of documents that is

specifically designed for a large university environment. The DCMS is designed to be the backbone system for a University's records, useable by all departments, employees, faculty and students. (Declaration of Richard Gordon ["Gordon Decl."] at ¶ 7; Comp. at ¶ 8).

The DCMS Computer Program was developed by Richmar while working on a contract for GW (the "Agreement"). (Comp. Ex. 1; Comp. at ¶ 7-8; Gordon Decl. at ¶ 12). Richmar was hired by GW to develop an electronic records and search system. The Agreement, entered on December 22, 2006, provided that Richmar would develop a document management system on a time and materials basis. That is, whatever time and materials it took to develop the software according to specifications provided by GW. (Comp. Ex. 1; Comp. at ¶ 7).

As the Agreement did not provide that GW would become the owner of any "commissioned" work, under the Copyright Act of 1976, ownership of the created software and code is retained by Richmar under the "work for hire" doctrine. Because Richmar saw the potential for broad application of the DCMS Computer Program to other universities and colleges requiring similar document management systems, thus providing substantial economic opportunities to Richmar, it was willing to charge lower rates to GW than it would have otherwise. (Comp. at ¶ 9, 41; Gordon Decl. at ¶ 5-6). Accordingly, Richmar agreed to charge GW fifty 30-40% below market rates, in order to retain ownership, and to be able to exclusively exploit a finished software program that could be commercially marketed to other large universities and colleges having similar document management functions. (Comp. at ¶ 12-14; Gordon Decl. at ¶ 6)

In November, 2006, GW informed Richmar that it was anxious to get the DCMS Computer Program up and running. In order not to delay installation, GW agreed not to require one of the features earlier envisioned for inclusion in the DCMS to be included in the First

Version. This feature was termed the "Document Only Search" feature, which required substantial modification to the DCMS Computer Program. (Comp. at ¶ 17; Gordon Decl. at ¶ 12).

On December 18, 2006, the DCMS Computer Program First Version was activated, and has been in use by GW since that date. (Comp. at ¶ 18; Gordon Decl. at ¶ 13).

Richmar had also been hired by GW to scan in over 1,000,000 pages of hard copy documents into the DCMS Computer Program system. These documents represent the back-logged records of GW that have never been digitized. For example, employee personnel records, W-2's, I-9's, faculty and student information. Richmar was hired under a March 30, 2006 Task Order to perform these services. Because these are time-intensive, primarily ministerial tasks, Richmar sub-contracted much of this work. (Comp. at ¶ 15; Gordon Decl. at ¶ 10).

This scanning project was on-going as of December 18, 2006, when the DCMS Computer Program was activated. (Gordon Decl. at ¶ 12).

Shortly after activation, on January 4, 2007, GW's Interim Chief Information Officer ("CIO") Ronald Bonig requested that Richmar agree to a "close out check list" as the Richmar contract was then due to expire on January 8, 2007. (Comp. Ex. 4; Comp. at ¶ 19 ; Gordon Decl. at ¶ 14). The check list included certain finishing items on the DCMS and finishing the scanning work. *Id.* According, to GW, if Richmar agreed to do these items, it would be paid for all its work, including what remained on the scanning project. There were, however, three peculiar requests included in the check list. (Gordon Decl. at ¶ 15). GW wanted Richmar to delete from its records and computers all copies of the DCMS Computer Program code, and the DCMS requirements and design documents (i.e. the DCMS specifications). (Comp. at ¶ 21; Gordon Decl. at ¶ 16). Compliance with these requests were not only contrary to Richmar's ownership

3

of the DCMS Computer Code, but would also leave Richmar without the ability to recreate the code, copyright the code, and, now in hindsight, to prosecute or defend a lawsuit. (Gordon Decl. at ¶ 16).

On January 5, 2007, Richmar objected to these three requests and informed GW that unless its contract was extended beyond the then January 8 termination date, that Richmar would cease all work, including completion of the scanning project. (Comp. Ex. 5; Comp. at ¶ 21; Gordon Decl. at ¶ 17). That same day, GW's Bonig wrote back, stating it was a misunderstanding and that he did not mean to request that Richmar give up its intellectual property. Bonig went on to state that he recognized GW had no legal right to that property. (See Comp. Ex. 6).

GW agreed to extend the contract date, and stated that GW would pay all Richmar invoices. Based on these assurances and in reliance thereon, Richmar continued to perform the scanning project. Bonig, however, appears to have deliberately misled Richmar. (Gordon Decl. at 15; Comp. at ¶¶ 51-53 ). After Richmar completed the scanning work, almost two months later, and after GW had paid all invoices for development of the DCMS Computer Program, on March 23, 2007 GW's Bonig suddenly announced he refused to pay the four scanning invoices in the amount of $233,424.17, claiming that the Richmar had over-billed for work on the DCMS Computer Program. (Comp. Ex. 7; Comp. at ¶ 30; Gordon Decl. at ¶ 22-23).

Richmar has also learned that in March and/or April, 2007, GW provided access to the DCMS Computer Program code to a Richmar competitor, Crown Consulting Partners. (Comp. at ¶ 33; Gordon Decl. at ¶ 25). Richmar has also learned that GW has altered and is modifying the DCMS Computer Program code, to add on the Document Only Search feature. (Gordon

4

Decl. at ¶ 27). GW does not have a license from Richmar that permits either of these actions. (Comp. at ¶ 39; Gordon Decl. at ¶ 28).

## II.    **Argument**

### A.    **Standard for Injunctive Relief for Copyright Infringement**

The Copyright Act expressly authorizes federal district courts to grant temporary and final injunctions to prevent or restrain infringement of a copyright, 17 U.S.C.A. § 502(a), and is frequently ordered in computer software infringement actions. *See e.g., Apple Computer Inc, v. Formula International Inc.*, 725 F.2d 521 (9th Cir. 1984); *Midway Manufacturing Co v. Strohon*, 565 F.Supp. 741 (N.D. Ill. 1983). Courts recognize that the market for computer software is short-lived, and that the most significant relief is injunctive.

The requirements for the issuance of a preliminary injunction were addressed by the District of Columbia District Court in *Health Ins. Ass'n of America v. Novelli*, 211 F.Supp.2d 23, 28 (D.D.C. 2002) (Walton, J). There Judge Walton applied the familiar four-prong test in determining whether the movant was entitled to injunctive relief. This test requires the Court to ask whether (1) the plaintiff has demonstrated that there is a substantial likelihood that it will prevail on the merits of one of its claims; (2) whether the plaintiff has shown that it would be irreparably harmed if injunctive relief is not awarded; (3) whether the issuance of injunctive relief would not "substantially harm" the other parties, and (4) whether awarding the relief is in the public interest. *Id.*, *citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

In applying this test, district courts "employ a sliding scale under which a particularly strong showing in one area can compensate for weakness in another." *Id.*, *citing Sociedad Anonima Vina Santa Rita v. Dept. of Treasury*, 193 F.Supp.2d 6, 13-14 (D.D.C. 2001), *quoting*

*City Fed. Fin. Copr. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C. Cir. 1995). Under this sliding scale, injunctive relief may be issued where, for example, the moving party has made a particularly strong showing of success on the merits "even if there is relatively slight showing of irreparable injury." *Id.,* at 13-14 (quotations omitted). However, "a party seeking preliminary injunctive relief must demonstrate at least some irreparable injury because 'the basis for injunctive relief in the federal courts has always been irreparable harm.'" *Id.* (quotation omitted). A harm is "irreparable" only if it is "both certain and great." *Id.* (citation omitted). The failure of the moving party to demonstrate irreparable harm is sufficient reasons for the district court to refuse to grant injunctive relief. *Id.*

Richmar submits that a temporary restraining order, or alternatively, a preliminary injunction is necessary to preserve Richmar's reputation and the value of its intellectual property.

**B.     There is a Substantial Likelihood that Richmar will Prevail on the Merits**

### 1.     GW's Modifications to the DCMS Code Constitutes an Unauthorized Derivative Work and Copyright Infringement

Section 106 of the Copyright Act, provides that the owner of copyright has the exclusive right to do and to authorize, among other acts, the reproduction of copyrighted work in copies, and the preparation of derivative works. In modifying Richmar's DCMS Computer Program, GW has created a "derivative work." A derivative work is "a work based upon one or more preexisting works, . . . or any other form in which a work may be recast, transformed or adapted." 17 U.S.C.A. § 101. Section 106(2) of the Copyright Act provides that the owner of a copyright has the exclusive right "to prepare derivative works based upon the copyrighted work . . . ."

The unauthorized preparation of a derivative work constitutes an infringement. For example, in *SAS Institute, Inc. v. S&H Computer Systems, Inc.*, 605 F.Supp. 816 (M.D. Tenn.

1985) the court found that, where a licensee of a computer program altered the program for purposes not allowed under the licensing agreement, an infringing derivative work was produced. And, because the derivative work was created without the consent of the copyright owner of the pre-existing work, the derivative work infringed the copyright. *See also e.g.., i-Systems, Inc. v. Softwares, Inc.*, 2004 WL 742082, \*8+ (D. Minn. 2004); *Atari Games Corp. v.Nintendo of America Inc.* 975 F.2d 832, 845 (Fed. Cir. 1992); *In re Indepndent Services Organizations Antitrust Litigation*, 964 F. Supp. 1469 (D.Kan. 1997) (derivative work constituted infringement when no license or authorization given).

### 2.     GW has Infringed Richmar's Copyrighted DCMS Computer Program

To succeed on a claim for copyright infringement, Richmar must establish (1) that it is the owner of the copyright and (2) that defendant violated at least one of the exclusive rights granted to copyright holders. 17 U.S.C. §§106, 501(a) (infringement occurs when alleged infringer engages in activity listed in § 106); *see also e.g., Perfect 10, Inc. v. CCBill, LLC,* 481 F.3d 751, 768 (9th Cir. 2007); *Sturdza v. United Arab Emirates*, 281 F.3d 287, 1295 (D.C. Cir. 2002). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights . . . ." *S.O.S., Inc. v. Paydy, Inc.*, 886 F.2d 1081, 1085 n. 3 (9th Cir. 1989). Here, defendant's alteration of the DCMS Computer Program code and its "display" to a Richmar competitor constitute violations of Richmar's exclusive interests.

Richmar's registration certificate constitutes *prima facie* evidence of the validity of the copyright, which includes ownership of the copyright in the work. 17 U.S.C. §410(c); *Apple Computer, Inc. v. Formula Int'l Inc., supra* 725 F.2d at 523.

In addition, copyright infringement "is ordinarily established by proof of (1) defendant's access to the copyrighted material and (2) substantial similarity between the material and the

7

allegedly infringed material." *Id.* GW clearly had access to the DCMS Computer Program and

its modifications and alterations thereto created an unauthorized derivative work that is based

upon, incorporates and is substantially similar to Richmar's work.

## C.    Richmar has Sustained and Will Continue to Sustain Irreparable Injury

### 1.    Irreparable Injury is Presumed When the Movant is a Registered Copyright Owner

In copyright infringement cases, "[a] copyright holder may be presumed to suffer

irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is

invaded, and such a holder is entitled to a preliminary injunction without a detailed showing of

harm." *Novelli, supra* 211 F.Supp. 2d at 28, *citing Hart v. Sampley,* No. CIV.A.91-3068, 1992

WL 100135, at *3 (D.D.C. Feb.4, 1992) (citations omitted). Similarly, "[t]rademark infringement

by its very nature causes irreparable injury." *Id., quoting, Appleseed Foundation Inc. v.*

*Appleseed Inst., Inc.,* 981 F.Supp. 672, 677 (D.D.C.1997) (citations omitted). Thus, if the Court

finds that plaintiff has demonstrated a substantial likelihood of success on the merits of either its

copyright infringement claim, it is not necessary for plaintiff to provide overwhelming evidence

in support of its showing of irreparable injury.

### 2.    Injunctive Relief is Necessary to Prevent Richmar Suffering Further Specific Irreparable Injury

Even though likelihood of success on the merits creates a presumption of irreparable

harm sufficient to support the issuance of a preliminary injunction, the plaintiff's case for a

preliminary injunction will be strengthened by the introduction of specific evidence of

irreparable harm. The loss to the plaintiff of customers who, without a preliminary injunction,

would likely buy the defendant's infringing software is probative of irreparable harm. *See Hubco*

*Data Products Corp. v. Management Assistance Inc.,* 1983 WL 1130, 219 U.S.P.Q. 450

8

(D.Idaho 1983). Potentially even more importantly a demonstration that the plaintiff stands to lose the entire market due to the rapid commercial obsolescence of computer programs constitutes irreparable injury. *See, e.g., Midway Manufacturing Co. v. Dirkschneider,* 543 F.Supp. 466 (D.Neb. 1981) (observing that popularity of audiovisual games is "notoriously short-lived" and that plaintiff had invested large sums of money in developing games in question, and that without injunction, public's interest in games might dissipate before plaintiff was able to vindicate its rights).

Here, Richmar faces these very dangers. Richmar does not have the resources of GW. GW, without an injunction, has the ability to place far greater resources into marketing a copy of the DCMS Computer Program, than could Richmar. Likewise, GW would have an unwarranted marketing edge, as its university reputation would give it instance credence in the market.

Where the production of infringing works constitutes only a small portion of the defendant's business, it may be easier to show that the harm to the defendant from issuing a preliminary injunction will be insubstantial compared to the irreparable harm likely to befall the plaintiff without an injunction. *Apple Computer Inc. v. Formula International Inc., supra.*; *Midway Manufacturing Co v. Arctic International Inc.,* 547 F.Supp. 999 (N.D.Ill. 1982), *aff'd* 704 F.2d 1009 (7th Cir. 1983), *cert denied,* 464 U.S. 832 (1983). Even when a preliminary injunction threatens severely to damage the defendant's business, the court have held that a knowing infringer has no basis to complain about the consequences of equitable relief granted to the plaintiff. *See Apple Computer Inc. v. Franklin Computer Corp.,* 714 F.2d 1240 (3d Cir. 1983), *cert dism,* 464 U.S. 1033 (1984); *Atari Inc v. North American Phillips Consumer Electronics Corp.,* 672 F.2d 607 (7th Cir. 1982), *cert denied,* 459 US 880 (1982).

GW's sole or joint-marketing of a DCMS copy or modification would constitute only a small fraction of GW's total revenues that are likely in the hundred's of millions of dollars. An injunction against GW would virtually have no effect on their survivability or operations. Indeed, GW received all it contracted for, and is now seeking to gain unfair benefits that even GW's Bonig in his January 5 letter conceded GW had "no legal right to." As significant, Bonig's statement—conceding Richmar's ownership of the code—illustrates the "knowing" nature of this on-going infringement, and the inequitable and deceptive way in which it was obtained.

Without immediate injunctive relief Richmar will continue to suffer specific irreparable injury. GW's continued modification of the DCMS, without a license to do so, violates Richmar's exclusive copyrights. GW has already provided a Richmar competitor with access to code, either for that firm's commercial use or potentially for a co-venture by that firm and GW. GW's continued provision of access to the DCMS Computer Program code to Richmar competitors threatens to destroy any ability of Richmar to exclusively market the DCMS Computer Code to other universities and colleges and to create and maintain a "reputation" in the market for being the exclusive vendor of this product. These actions lessen the value of Richmar's copyright and constitute a clear infringement of Richmar's exclusive rights. These are the very irreparable injuries injunctive relief has been recognized as necessary to implement in order to protect valid copyright ownership.

### D.    Requested Relief

Infringers of software are likewise in a poor position to complain about the scope of relief. Thus, in *SAS Institute v. S&H Computer Systems*, Inc., 605 F.Supp. 816 (M.D.Tenn. 1985), the court rejected the defendant's proposal that it limit a permanent injunction to

decreeing that only specific lines of infringing source code be excised. Instead, it enjoined distribution of defendant's entire program.

Richmar requests the following relief:

a.      That GW be required to return to Richmar until the resolution of the preliminary injunction hearing, all copies of the DCMS Computer Program source code;

b.      That pending resolution of the preliminary injunction GW not be permitted to use the Document Only Search feature and that Richmar be given access or oversight of the removal of this feature from the GW's version of the DCMS Computer Program.

3.      GW be enjoined from engaging in, or supporting, any commercial marketing or use of the DCMS Computer Program in either its original or altered form; and

4.      GW be enjoined from providing access to DCMS Computer Program source code to any third parties.

DATED:  May 7, 2007                          Respectfully submitted,

                                             Geoffrey P. Gitner (DC Bar No. 176479)
                                             Law Offices of Geoffrey P. Gitner
                                             Watergate, Twelfth Floor
                                             600 New Hampshire Ave., N.W.
                                             Washin/gton, D.C. 20037
                                             Ph: (202) 772-5926
                                             Fax: (202) 772-5858

                                             Counsel to Plaintiff

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **CUS4, INC. D/B/A RICHMAR & ASSOCIATES et al.**<br><br><br>**Plaintiff,**<br><br>**v.**<br><br>**GEORGE WASHINGTON UNIVERSITY,**<br><br>**Defendant** | Case No. |

## DECLARATION OF RICHARD GORDON, JR.

I, Richard Gordon, Jr. depose and declare as follows:

1.      I am the President of CUS4, Inc., which does business under the name of Richmar & Associates.  Richmar is an independent management consulting and software development company.  The company was started in December 1995. We are a Small and Disadvantaged Business Enterprise certified to participate in the Small Business Administration's Section 8(a) Development Program, specializing in custom, software development for government agencies and large institutions.

2.      On December 22, 2005 Richmar entered into a time and materials contract (the "Agreement") with The George Washington University ("GW").  The Agreement is attached as Exhibit 1 to the Complaint.  Under the Agreement, Richmar was hired as an independent contractor.  Our task was to develop a custom computer system that would initially manage electronic documents for several departments of GW, Human Resource Services, Office of

Research Services, Faculty Personnel and Medical Faculty Personnel, and would later be expanded University-wide.

3.      At this point GW had no effective means to electronically manage its massive amount of hard copy records.  Our task was to design a computer system architecture which would permit GW to convert its hard copy records to digital form, and to be able to retrieve information in these digitized documents by certain searches, including by name, subject matter and classification.  Under the Agreement, Richmar was to help GW define the requirements of the system.

4.      In 2006 Richmar developed the Document and Case Management System ("DCMS").  The DCMS is a computer software program and code that permits interfacing and employee and document searching between commercial off-the-shelf ("COTS") programs known as Documentum and Banner.  Digitized documents are maintained in Documentum.  Banner provides security for the computer system, and is designed to permit employees access to information dependent on their security classification.  DCMS merges the functions of the two programs, controls the method of search and provides a back bone architecture that could permit use of the DCMS for all university activities and records.

5.      In the Agreement GW gave up the right to ownership of the system and code that Richmar developed.  Under the Copyright Act of 1976, an independent contractor, under a "work for hire contract" obtains ownership rights to work created by it. As such, under the Agreement, Richmar obtained ownership to those programs created by it.

6.      As Richmar would own the creative work developed under the Agreement we recognized the huge potential market value of such a system and therefore we agreed to below market rate for our services of approximately thirty 30 - 40 %.

2

7.      We recognized that development of a computer system under the Agreement was a unique opportunity to develop a system that would have broad application to other universities and colleges, and that once developed by Richmar for GW, Richmar could market this system and present substantial economic opportunities for Richmar. Further, development of the system under the Agreement would permit a first-of-a-kind integration of the Documentum (electronic documents) and Banner (enterprise resource planning or "ERP") systems and provide search capabilities to include *inter alia* university departments, students, undergraduate and graduate faculties. Banner is a COTS ERP system that is used by most universities and colleges in the United States. Documentum is a COTS document management system, albeit, criticized by GW and others as being user-unfriendly because of its overly complex user interface. The DCMS would be, and now is, a first of its kind system that integrates the features of Documentum specifically using Banner. DCMS can serve as the "back bone" for all institutions of higher learning to electronically integrate their documents, whether those documents pertain to academic advancement, accounts receivables, human resources, finance, employees, students or faculty.

8      By agreeing to develop the system as well as perform the scanning project for below market rates, Richmar has made a substantial and valuable investment of time and money in developing the DCMS. Also, during the project GW requested that we make an additional investment solely of part of our time to develop the system, deliver it on December 18, 2006 and a prototype of an expanded system for GW's Office of Financial. Richmar invested thousands of dollars of its service and time without compensation. We hoped to recoup these investments by having the exclusive rights to the system and being able to market it to universities and colleges.

3

9.    During the development of the DCMS my employees and I had numerous conversations with GW employees exploring possible ways to co-market the system once operational. One area of discussion was that GW would host the system, and Richmar would market the system on a subscription basis to other universities using the GW installed application and the GW host site. Through these discussions, it was obvious to me that GW personnel were aware of the value of a DCMS system, as well as being aware that Richmar owned the creative rights to the system.

10.    On March 30, 2006, GWU issued a task order under the Agreement (the "Task Order," Exhibt 2, attached to the Complaint) for Richmar to convert over 1,000,000 hard copy pages to digital form and for loading these images into DCMS with predefined document attributes. In order to perform this Task, Richmar was required to hire sub-contractors that specialized in scanning. Richmar fronted the money to pay for these sub-contractors.

11.    In approximately the middle of the development of the DCMS, September, 2006, GW's former head of its information technology department, known as Information Sevices System (ISS) left GW. Thereafter, GW's DCMS project manager, also began to be transitioned out and left GW in January, 2007. In September, 2006, Ronald Bonig was named GW's Interim Chief Information Officer ("CIO").

12.    In November, 2006, GW, through Mr. Bonig, informed Richmar because he did not want to delay implementation of the DCMS, that GW would not require the First Release to include a feature that had been considered by GW for inclusion in the DCMS, a "Document Only" search feature. Richmar was directed not to continue development of this feature. It was also agreed by Richmar and GW that after release of the First Version, Richmar would not

4

continue working on the development aspects of the DCMS, but would complete the scanning services under the March 30, 2006 Task Order.

13.    On December 18, 2006, the First Release of DCMS was successfully activated and has been in use by GW since that date. I have personally been informed by GW users of the system how pleased they are with the system.

14.    On January 4, 2007, Ronald C. Bonig sent me a letter requesting that Richmar agree to a contract extension (beyond the then expiration date of January 8, 2007) in order to complete additional work on the DCMS and to complete the scanning project. Bonig also attached a punch list of items to be completed before the expiration of the Agreement. (Letter attached as Exhibit 3 to the Complaint).

15.    In his January 4, 2007 letter, Bonig promised that if Richmar would perform the close out punch list items, including the scanning project, that "[u]pon satisfactory completion of the tasks . . . payment would be made by GWU in accordance with section 7 of the Contract." (Letter attached as Exhibit 3 to the Complaint). I understood Bonig to mean that if Richmar completed the DCMS punch out list and scanning work that Richmar would be paid. I also understood him to mean that GW was satisfied with the DCMS. At no time, prior to March 23, 2007, did Bonig, or anyone else from GW, ever threaten to withhold payment, advise us that GW claimed we had over-billed, provided incompetent services, or did not perform work for which we billed. Bonig, and GW, never gave us an inkling that they would withhold payment for the scanning services, claiming that we had performed improperly in developing the DCMS. Rather, I feel that I was misled by Bonig to complete all of the work on the scanning project so that he could then claim set offs after all the work had been done and he had a fully functional system. Without input of the scanned documents, the DCMS would have failed to meet a critical audit

requirement for the University and would be less than fully functional. Bonig had previously stated to me that if the documents were all in by February the project would be considered a raging success.

16.    Included in Bonig's punch list was a request that Richmar remove all code and requirements and design documents regarding the DCMS from Richmar's computers. This was a strange request and one I and my colleagues with over 50 years of experience in the software development field had never seen. If we gave up the Code and the requirement and design documents, not only would we have no product, we could never recreate the product and we could not register our copyright. In hindsight, I now realize that neither could we have prosecuted nor defended a lawsuit as we would have had no documentary history of the project or proof of how we created the DCMS. This was also confounding in that GW was aware that Richmar owned the creative work. Accordingly, I objected to these provisions.

17.    By letter of January 5, 2007, I advised Bonig that Richmar was under no obligation to return the DCMS codes, requirement and design documents. (Letter attached as Exhibit 4 to the Complaint). I also informed Bonig that I would not agree to this portion of the punch list and that if there was no agreement as of January 8, 2007 to extend the Agreement, Richmar would cease providing services to GW, including the completion of the scanning project.

18.    In response to my January 5 letter, Bonig wrote to me again on January 5, 2007. In this letter, Bonig stated that he recognized Richmar ownership rights to the DCMS system, and that he would withdraw the request. He also wrote that "it was not our [GW's] intention to make RICHMAR erase its own intellectual property---which legally we would have no right to do anyway." (Letter attached as Exhibit 5 to the Complaint).

6

19.    Based on Bonig's representations that we would be paid for the DCMS and scanning project if we agreed to extend the agreement, I agreed to complete the punch list on the First Version, excluding items 8-10, and the scanning. The punch list and agreement was signed by Bonig and back-dated by him, two days before the agreement.

20.    After Bonig's second letter of January 5, 2007, we finished the punch list items and continued with the scanning. Subsequently GW paid the three outstanding invoices for the development and installation of the DCMS. At no time, prior to paying these invoices, did GW advise Richmar that it believed that the invoices were not justified, supported, or earned or that GW was dissatisfied with the system.

21.    We continued through February 26, 2007, with the scanning project. GW was always slow in paying invoices. As of the end of the project the following invoices---all for scanning work---were unpaid for a total of $233,424.17.

- January 5, 2007      Invoices 23-S      $71,350.80
- January 18, 2007     Invoice 24-S        71,476.67
- February 5, 2007     Invoice 25-S        69,715.69
- February 26, 2007    Invoice 26-S        20,881.01

22.    In March, 2007, Richmar made repeated requests for payment of the invoices.

23.    On March 23, 2007 GW's Bonig wrote to me and for the first time informed Richmar that GW was not satisfied with Richmar's work in developing the DCMS and would therefore refuse to honor the outstanding invoices for the scanning work.

24.    Richmar has sought on numerous occasions, including twice on April 5 and 9, 2007 by letter from our counsel, to have GW inform Richmar of what their specific grievances were regarding the DCMS. GW has refused to provide this information. (Letters attached as

Exhibits 6, 7 and 8 to the Complaint). As such, Richmar has been unable to determine if there is a possibility to cure any alleged grievance, or otherwise inform itself of GW's complaints.

25.    I have been informed that in March or April, 2007, GW provided access to the DCMS Code to an outside computer consultant, Crown Partners Consulting, who is a competitor of Richmar. This exposure poses an immediate and irreparable harm to Richmar's exclusive rights to the DCMS and to exclusively market the DCMS to universities and colleges. Crown could have copied the code and can either itself, or in conjunction with GW (as we had discussed with GW) market the DCMS to other educational institutions for substantial profits.

26.    GW itself provides commercial computer services to outside parties, including, leasing computer space and providing computer services and personnel.

27.    I have also been informed that in March and April, 2007 defendant in order to add the Document Only Search to the DCMS, modified and changed certain portions of the DCMS program code.

28.    Richmar has never authorized defendant to make these codes changes or permit access to the DCMS to Richmar's competitors.

29.    Richmar is in danger of losing its valuable intellectual rights to DCMS by having GW or third parties to whom GW provides access to the DCMS code, commercially exploit the code. Once the code gets into public circulation, it is impossible to police further copying and exploitation of the DCMS code.

30.    Richmar will lose the good will attached to having the only one-of-a-kind system that integrates Documentum with Banner. This product will enhance Richmar's reputation, and has the potential to permit Richmar to become a prominent "player" in the educational software

industry. Without protection of its copyright Richmar will lose this ability to enhance its reputation.

31.    Additionally, by altering the DCMS code without a license or payment to Richmar, GW has unjustly enriched itself through the economic sacrifice Richmar was willing to make to develop the DCMS.

32.    In January 2007, Richmar also agreed to allow GW to retain and use the DCMS source code in order to adjust or fix any small remaining defects in the First Version. Richmar, did not, however, agree to allow GW to add new features or make major alterations to the source code. Since December 18, 2006, there has been adequate time for GW to fix any defects that may have remained, thus at this time there remains no reason for GW to retain the source code without a license. Also, when Richmar agreed to allow GW to retain the source code for defect fixes, we did not envision that GW would seek to make unauthorized alterations to the source code, commercially exploit the code and expose the code to our competitors and infringe the code.

33.    I believe that the appropriate immediate injunctive relief includes the return from GW of the source code. GW can operate the system as delivered. It does not need the source code to operate. The only way to ensure that GW no longer infringes would be to return the code. In addition, it would take an hour or less to delete the Document Only Search feature from GW's DCMS system. This is can be done, either by Richmar, or by GW with Richmar overseeing the removal of the Document Only Search feature from the system.

Under penalties of perjury, I swear that the foregoing is true and accurate to the best of my knowledge and belief.

DATED: _5- 7 -07_

_____
Richard Gordon, Jr.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**CUS4, INC. D/B/A**
**RICHMAR & ASSOCIATES et al.**

**Plaintiff,**

**v.**

**GEORGE WASHINGTON UNIVERSITY,**

**Defendant**

Case No. _____

## ORDER
## ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER,

UPON CONSIDERATION of Plaintiff's Motion for a Temporary Restraining Order, and having heard the argument of counsel for both parties, it is this ____ day of May, 2007,

ORDERED, that the plaintiff's motion is GRANTED.

The Court finds as follows:

(1)    the plaintiff will suffer an irreparable injury if relief is denied, as irreparable injury is presumed upon a finding of copyright infringement and, in addition, plaintiff has made a showing of additional specific irreparable injury;

(2)    the plaintiff is likely to prevail on the merits, as it is the owner of the DCMS Computer Program copyright;

(3)    the balance of potential harm favors the plaintiff as there is little harm to defendant as it can continue to use the DCMS Computer Program system delivered by the plaintiff with the exception of the Document Only Search features; and

(4)     the public interest favors granting relief as there is a public policy to protect copyrights.

IT IS FURTHER ORDERED:

(1)     that defendant is enjoinged from any copying, alteration or modification of the DCMS Computer Program

(2)     that defendant shall return to plaintiff all copies of the DCMS Computer Program source code within 24 hours of this Order'

(3)     that plaintiff shall be given access to the defendant's copies of the DCMS Ccomputer code on May __, 2007, at which time it shall remove that portion of the DCMS Computer Program code related to the Document Only Search feature and any other additions or alterations to the DCMS code.

(4)     that defendant may not give access to the DCMS Computer Program to any third party.

_____

Judge

COPIES TO:

Geoffrey P. Gitner
Law Offices of Geoffrey P. Gitner
Watergate, Twelfth Floor
600 New Hampshire Ave., N.W.
Washington, D.C. 20037

Leslie J. Polt
Adelberg, Rudlow, Dorf & Hendler, LLC
7 St. Paul Street, Suite 600
Baltimore, MD 21202-1612

*Counsel to Plaintiff*

Linda Schutjer, Esq.
Associate General Counsel
George Washington University
2100 Pennsylvania Avenue, N.W.
Suite 250
Washington, D.C. 20052

*Counsel to Defendant*

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| **CUS4, INC. D/B/A**<br>**RICHMAR & ASSOCIATES et al.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GEORGE WASHINGTON UNIVERSITY,**<br><br>**Defendant** | Case No. _____ |

## ORDER
## ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

UPON CONSIDERATION of Plaintiff's Motion for a Preliminary Injunction, and having heard the argument of counsel for both parties, it is this ____ day of _____, 2007,

ORDERED, that the plaintiff's motion is GRANTED.

The Court finds as follows:

(1)    the plaintiff will suffer an irreparable injury if relief is denied, as irreparable injury is presumed upon a finding of copyright infringement and, in addition, plaintiff has made a showing of additional specific irreparable injury;

(2)    the plaintiff is likely to prevail on the merits, as it is the owner of the DCMS Computer Program copyright;

(3)    the balance of potential harm favors the plaintiff as there is little harm to defendant as it can continue to use the DCMS Computer Program system delivered by the plaintiff with the exception of the Document Only Search features; and

(4)    the public interest favors granting relief as there is a public policy to protect copyrights.

IT IS FURTHER ORDERED:

(1)    that defendant is enjoined from any copying, alteration or modification of the DCMS Computer Program;

(2)    that defendant shall return to plaintiff all copies of the DCMS Computer Program source code within 24 hours of this Order;

(3)    that plaintiff shall be given access to the defendant's copies of the DCMS Ccomputer code on _____ ____, 2007, at which time it shall remove that portion of the DCMS Computer Program code related to the Document Only Search feature and any other additions or alterations to the DCMS code.

(4)    that defendant may not give access to the DCMS Computer Program to any third party.


_____
Judge


COPIES TO:

Geoffrey P. Gitner
Law Offices of Geoffrey P. Gitner
Watergate, Twelfth Floor
600 New Hampshire Ave., N.W.
Washington, D.C. 20037

Leslie J. Polt
Adelberg, Rudlow, Dorf & Hendler, LLC
7 St. Paul Street, Suite 600
Baltimore, MD 21202-1612

*Counsel to Plaintiff*

Linda Schutjer, Esq.
Associate General Counsel
George Washington University
2100 Pennsylvania Avenue, N.W.
Suite 250
Washington, D.C. 20052

*Counsel to Defendant*